IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANEESHA BRYANT,              :

      Plaintiff          :

                   :       Docket No.

         v.           :

                   :

WILKES-BARRE HOSPITAL   :
COMPANY, LLC             :

                   :

      Defendant      :

## C O M P L A I N T

1.     This action is authorized, initiated, founded upon, and arises under the provisions of federal law, particularly Title VII of the Civil Rights Act of 1964, as amended, specifically 42 U.S.C. §§2000e-2(a) and 2000 e-3(a); the Civil Rights Act of 1870, specifically 42 U.S.C. §1981, as well as state law, specifically the Pennsylvania Human Relations Act, 43 P.S. §955(a) and (d). Declaratory relief is sought under 28 U.S.C. §§2201 and 2202.

2.     The jurisdiction of this court is conferred by 28 U.S.C. §§1331, and 1343(a), 42 U.S.C. §2000e-2(a) at 42 U.S.C. §2000e-3(a) and, as well as this court's jurisdiction over pendent state claims.

3.     The unlawful employment practices and other actions alleged herein were committed within the Middle District of Pennsylvania.

4.     The amount in controversy in this matter exceeds one hundred thousand dollars ($100,000.00).

## II.   PARTIES

5.  The Plaintiff is an adult female individual residing at 122 Pringle Street, Kingston, Luzerne County, PA 18704.

6.  Defendant Wilkes-Barre Hospital Company, LLC is a foreign limited liability corporation incorporated in the State of Delaware with a registered office located at c/o Corporation Service Company, Harrisburg, Dauphin County, PA and a mailing address located at 4000 Meridian Blvd., Franklin, TN, 37067.

7.  Defendant's principal place of business is 575 North River Street, Wilkes-Barre, Luzerne County, Pennsylvania 18764 and trades and does business under the name of Wilkes-Barre General Hospital.

## III.   ADMINISTRATIVE PREREQUISITES

8.     Plaintiff timely filed a complaint with the Equal Employment Opportunity Commission alleging discrimination, harassment and retaliation on account of race, color, national origin and protected activity, made illegal by Title VII of the Civil Rights Act of 1964, against the Defendant, which complaint was dual filed with the Pennsylvania Human Relations Commission, a copy of which is attached hereto and made a part hereof as Exhibit A.

9.     Plaintiff has requested a right to sue letter from the Equal Employment Opportunity Commission which is expected to be received in the near future.

## IV.    RIGHT OF EQUITABLE RELIEF

10.    Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs herein alleged, and this suit for declaratory and injunctive relief is his only means of securing adequate relief.

## V.    JURY TRIAL DEMAND

11.    Plaintiff demands a trial by jury herein.

## VI.    FACTUAL ALLEGATIONS

12.    Defendant employs more than 1000 individuals.

13.    Defendant operates a hospital.

14.    At all times material hereto, Defendant was, and is, engaged in an industry effecting commerce.

15.    Plaintiff is of the black/African-American color, race and national origin.

16.    Plaintiff was employed by Defendant as a scheduling specialist since or about April 2008.

17.    From the outset of her employment, Plaintiff worked as scheduling specialist for the operating room at the Wilkes-Barre General Hospital.

18.    At our about the time of the acquisition of the Wilkes-Barre General Hospital by Community Health Systems and the commencement of operations by Defendant under the name of Wilkes-Barre Hospital Company, LLC, Plaintiff continued to work as a scheduling specialist, but now with

responsibility for both same day surgery and the operating room and began to work with completely new staff at the surgery center location.

19.     At all times material hereto, Plaintiff was qualified for employment by Defendant as a scheduling specialist, for both same day surgery and the operating room.

20.     All other persons employed by Defendant at its surgery center location are of the white race and color and none are of African national origin.

21.     At our about the time of the acquisition of the Wilkes-Barre General Hospital by Community Health Systems and the commencement of operations by Defendant under the name of Wilkes-Barre Hospital Company, LLC, Plaintiff began to report directly to Lisa Cernera, director of the surgery center.

22.     Following the acquisition of the Wilkes-Barre General Hospital by Community Health Systems and the commencement of operations by Defendant under the name of Wilkes-Barre Hospital Company, LLC, Plaintiff began to be mocked about her speech patterns and pronunciations by one of Defendant's employees, Amy Stewart.

23.     Amy Stewart is of the Caucasian race and white color and is not of an African national origin.

24.     On a regular basis, through and including August 2012, Ms. Stewart would say to and around Plaintiff, "birfday," instead of "birthday," and "aks," instead of "ask."

25.   Ms. Stewart's mocking of Plaintiff occurred on at least a weekly basis during this period of time.

26.   On at least one occasion, Plaintiff asked Ms. Stewart where she heard such language and Ms. Stewart responded the "colored station," referencing Black Entertainment Television.

27.   Plaintiff objected to Ms. Stewart's mocking, but it did not stop.

28.   On an occasion in the summer of 2012, Plaintiff was asked by a white physician employed by Defendant, Dr. Glen Weaver, "Aneesha, what do you eat, chicken and watermelon?"

29.   Plaintiff told Dr. Weaver that she was very offended by the question.

30.   Dr. Weaver responded to Plaintiff, "Come, people tell Polack jokes all the time."

31.   On August 16, 2012, Ms. Stewart repeated the "birfday"and "aks" mocking comments in Plaintiff's presence at the front counter of the workplace.

32.   The Stewart comments on August 16, 2012 caused Plaintiff to become visibly upset.

33.   Momentarily afterwards, Ms. Stewart and Dr. Weaver spoke together.

34.     Momentarily afterwards, Dr. Weaver approached Plaintiff and asked her "Why do you say "birfday" and "aks?"

35.     Thereupon, Plaintiff went to the office of Mike Padden, the director of the surgical center, and complained of the verbal, racial harassment she had been subjected to.

36.     Later that day, Ms. Stewart approached Plaintiff and told her she knew she had complained to Mr. Padden and was trying to get her fired.

37.     On Friday, August 17, 2012, Plaintiff was not scheduled to work.

38.     On Plaintiff's next scheduled day of work, Monday, August 20, 2012, Plaintiff observed that people were not talking to her.

39.     Mr. Padden was off work from Thursday, August 16, 2012 until Wednesday, August 22, 2012.

40.     On Wednesday, August 22, 2012, Plaintiff went to Mr. Padden again and complained that he co-workers were not talking to her and in at least one instance, failed to provide her with necessary work documents, in the form of a schedule.

41.     Mr. Padden told Plaintiff that Ms. Stewart had come to him to ask if she was going to lose her job and Mr. Padden told Plaintiff that he told Ms. Stewart that he did not know.

42.     On Friday, August 24, 2012, Plaintiff went to Lisa Cernera, director of the main operating room for Defendant, and complained to her of the verbal, racial harassment she had been subjected to, as well as the fact that her

co-employees were no longer speaking to her at work, nor cooperating with her in their work.

43.    Ms. Cernera told her that she couldn't identify with her because she was not black herself and told her that her own mother still refers to black people as being "colored."

44.    The above described conduct of toward the Plaintiff was unwelcome by her, and was severe and pervasive.

45.    The harassment and retaliation was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and created a severely abusive working environment, such that Plaintiff's working conditions were so intolerable that a reasonable person would have felt compelled to resign.

46.    Defendant took no effective action to remediate the harassment and retaliation or to prevent its continuation.

47.    At noon on August 28, 2012, Plaintiff provided Ms. Cernera with a letter of resignation, a copy of which is attached hereto and made a part hereof as Exhibit B.

48.    As a result of the actions and omissions of Defendant, Plaintiff has suffered discrimination and harassment in her employment on account of race, color and national origin and has been damaged.

49.    As a result of the actions and omissions of Defendant, Plaintiff was constructively discharged.

50.    As a result of the actions and omissions of Defendant, Plaintiff has suffered retaliation in her employment and has been damaged.

51.    The actions and omissions of Defendant have been outrageous, extremely offensive, intentional and discriminatory against Plaintiff on a continuing basis and have been performed with malicious and reckless indifference to Plaintiff's civil rights.

52.    The actions and omissions of Defendant have been outrageous, extremely offensive, intentional and retaliatory against Plaintiff on a continuing basis and have been performed with malicious and reckless indifference to Plaintiff's civil rights.

## VII.    CAUSES OF ACTION

### COUNT I

### CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. §2000e-2(a)

### Discrimination on Account of Race, National Origin and Color

53.    Paragraphs 1 through 52 are incorporated herein by reference as though set forth in full.

54.    The actions described herein were in violation of the civil rights of Plaintiff, occurred during the course of Plaintiff's employment with the Defendant and were carried out by the Defendant and its agents, servants and employees.

55.    The actions described herein are in violation of the civil rights of Plaintiff and were committed by the Defendant because of Plaintiff's race, national origin, and color

56.     Plaintiff has suffered damages in the form of severe emotional distress, anxiety, and other consequential and incidental damages.

57.     The actions and omissions of Defendant, as described herein, were willful, deliberate, intentional, outrageous, and performed with an extreme indifference to the rights of Plaintiff, such that an award of punitive damages is warranted.

**WHEREFORE,** Plaintiff demands judgment in her favor and against the Defendant and prays:

(a)     That this court declare that the practices in which the Defendant has engaged are discriminatory and in violation of Title VII of the Civil Rights Act of 1964;

(b)     That this court permanently enjoin the Defendant from discriminating against its employees on the basis of race with regard to the terms and conditions of employment;

(c)     That this court order the Defendant to pay to Plaintiff back pay;

(d)     That this court order the Defendant to pay to Plaintiff front pay;

(e)     That this court order the Defendant to pay to Plaintiff compensatory damages;

(f)     That this court order the Defendant to pay to Plaintiff punitive damages;

(g)     That this court order the Defendant to pay to Plaintiff reasonable attorneys' fees and the costs of this action;

(h)     That this court retain jurisdiction over this action to ensure full compliance with the orders of this court and with applicable laws and require Defendant to file such reports as this court deems necessary to evaluate such compliance; and,

(i)     That this court order such other and further relief as may be just and equitable.

## COUNT II

## CIVIL RIGHTS ACT OF 1870
## 42 U.S.C. §1981

## Discrimination on Account of Race and Color

58.     Paragraphs 1 through 57 are incorporated herein by reference as though set forth in full.

59.     The actions described herein were in violation of the civil rights of Plaintiff, occurred during the course of Plaintiff's employment with the Defendant and were carried out by the Defendant and its agents, servants and employees.

60.     The actions described herein are in violation of the civil rights of Plaintiff and were committed by the Defendant because of Plaintiff's race.

61.     Plaintiff has suffered damages in the form of severe emotional distress, anxiety, and other consequential and incidental damages.

62.     The actions and omissions of Defendant, as described herein, were willful, deliberate, intentional, outrageous, and performed with an extreme indifference to the rights of Plaintiff, such that an award of punitive damages is warranted.

**WHEREFORE,** Plaintiff demands judgment in her favor and against the Defendant and prays:

(a)     That this court declare that the practices in which the Defendant has engaged are discriminatory and in violation of the Civil Rights Act of 1870;

(b)     That this court permanently enjoin the Defendant from discriminating against its employees on the basis of race and/or color with regard to the terms and conditions of employment;

(c)     That this court order the Defendant to pay to Plaintiff back pay;

(d)     That this court order the Defendant to pay to Plaintiff front pay;

(e)     That this court order the Defendant to pay to Plaintiff compensatory damages;

(f)     That this court order the Defendant to pay to Plaintiff punitive damages;

(g)     That this court order the Defendant to pay to Plaintiff reasonable attorneys' fees and the costs of this action;

(h)     That this court retain jurisdiction over this action to ensure full compliance with the orders of this court and with applicable laws and require Defendant to file such reports as this court deems necessary to evaluate such compliance; and,

(i)     That this court order such other and further relief as may be just and equitable.

## COUNT III

## CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. §2000e-3(a)

### Retaliation

63.     Paragraphs 1 through 62 are incorporated herein by reference as though set forth in full.

64.     The actions described herein were in violation of the civil rights of Plaintiff, occurred during the course of Plaintiff's employment with the Defendant and were carried out by the Defendant and its agents, servants and employees.

65.     The actions described herein are in violation of the civil rights of Plaintiff and were committed by the Defendant in retaliation for Plaintiff's protected activity under the statute.

66.     Plaintiff has suffered damages in the form of severe emotional distress, anxiety, and other consequential and incidental damages.

67.     The actions and omissions of Defendant, as described herein, were willful, deliberate, intentional, outrageous, and performed with an

extreme indifference to the rights of Plaintiff, such that an award of punitive damages is warranted.

**WHEREFORE,** Plaintiff demands judgment in her favor and against the Defendant and prays:

(a)     That this court declare that the practices in which the Defendant has engaged are retaliatory and in violation of Title VII of the Civil Rights Act of 1964;

(b)     That this court permanently enjoin the Defendant from retaliating against its employees for engaging in protected activity with regard to the terms and conditions of employment;

(c)     That this court the Defendant to pay to the Plaintiff back pay:

(d)     That this court the Defendant to pay to the Plaintiff front pay

(e)     That this court order the Defendant to pay to Plaintiff compensatory damages;

(f)     That this court order the Defendant to pay to the Plaintiff punitive damages;

(g)     That this court order the Defendant to pay to Plaintiff reasonable attorneys' fees and the costs of this action;

(h)     That this court retain jurisdiction over this action to ensure full compliance with the orders of this court and with applicable laws and require Defendant to file such reports as this court deems necessary to evaluate such compliance; and,

(i)     That this court order such other and further relief as may be just and equitable.

## COUNT IV

## CIVIL RIGHTS ACT OF 1870
## 42 U.S.C. §1981

## Retaliation

68.     Paragraphs 1 through 67 are incorporated herein by reference as though set forth in full.

69.     The actions described herein were in violation of the civil rights of Plaintiff, occurred during the course of Plaintiff's employment with the Defendant and were carried out by the Defendant and its agents, servants and employees.

70.     The actions described herein are in violation of the civil rights of Plaintiff and were committed by the Defendant in retaliation for Plaintiff's protected activity under the statute.

71.     Plaintiff has suffered damages in the form of severe emotional distress, anxiety, and other consequential and incidental damages.

72.     The actions and omissions of Defendant, as described herein, were willful, deliberate, intentional, outrageous, and performed with an extreme indifference to the rights of Plaintiff, such that an award of punitive damages is warranted.

**WHEREFORE,** Plaintiff demands judgment in her favor and against the Defendant and prays:

(a)     That this court declare that the practices in which the Defendant has engaged are retaliatory and in violation of the Civil Rights Act of 1870;

(b)     That this court permanently enjoin the Defendant from retaliating against its employees for engaging in protected activity with regard to the terms and conditions of employment;

(c)     That this court order the Defendant to pay to the Plaintiff back pay;

(d)     That this court order the Defendant to pay to the Plaintiff front pay;

(e)     That this court order the Defendant to pay to Plaintiff compensatory damages;

(f)     That this court order the Defendant to pay to Plaintiff punitive damages;

(g)     That this court order the Defendant to pay to Plaintiff reasonable attorneys' fees and the costs of this action;

(h)     That this court retain jurisdiction over this action to ensure full compliance with the orders of this court and with applicable laws and require Defendant to file such reports as this court deems necessary to evaluate such compliance; and,

(i)     That this court order such other and further relief as may be just and equitable.

## COUNT V
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. §955(a)
## Discrimination Based on Race, National Origin and Color

73.     Paragraphs 1 through 72 of this Complaint are incorporated herein by reference as though set forth in full.

74.     The unlawful employment practices hereinbefore stated constitute a violation of the Pennsylvania Human Relations Act, 43 P.S. §955(a).

WHEREFORE, Plaintiff demands judgment in her favor and against the Defendant and prays:

(a)     that this court declare that the practices in which the Defendant has engaged are discriminatory and in violation of the Pennsylvania Human Relations Act, 43 P.S. §955(a);

(b)     that this court permanently enjoin the Defendant from discriminating against employees of the Defendant on the basis of race, color and/or national origin with regard to the terms and conditions of employment;

(c)     That this court order the Defendant to pay the Plaintiff back pay;

(d)     That this court order the Defendant to pay the Plaintiff front pay;

(e)     that this Court order the Defendant to pay Plaintiff compensatory damages;

(f)     Plaintiff's reasonable attorney fees and costs of this litigation;

(g)     that this Court retain jurisdiction over this action to ensure full compliance with the orders of this court and with applicable laws that require Defendant to file such reports as this Court deems necessary to evaluate such compliance; and

(h)     that this Court order such other and further relief as may be just and equitable.

## COUNT VI
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. §955(d)
### Retaliation

75.     Paragraphs 1 through 74 of this Complaint are incorporated herein by reference as though set forth in full.

76.     The unlawful employment practices hereinbefore stated constitute a violation of the Pennsylvania Human Relations Act, 43 P.S. §955(d).

WHEREFORE, Plaintiff demands judgment in her favor and against the Defendant and prays:

(a)     That this Court declare that the practices in which the Defendant has engaged are retaliatory, discriminatory and in violation of the Pennsylvania Human Relation Act, 43 P.S. §955(d);

(b)     That this Court permanently enjoin the Defendant from retaliating against employees of the Defendant for engaging in protected activity, with regard to the terms and conditions of employment;

(c)     That this Court order the Defendant to pay to the Plaintiff back pay;

(d)     That this Court order the Defendant to pay to the Plaintiff front pay;

(e)     That this Court order the Defendant to pay Plaintiff compensatory damages;

(f)     That this Court order the Defendant to pay Plaintiff's reasonable attorneys' fees and costs of this litigation;

(g)     That this Court retain jurisdiction over this action to ensure full compliance with the orders of this Court and with applicable laws that require Defendant to file such reports as this Court deems necessary to evaluate such compliance; and,

(h)     That this Court order such other and further relief as may be just and equitable.

## COUNT VII

## CIVIL RIGHTS ACT OF 1964

## 42 U.S.C. §2000e-2(a)

## Racial Harassment

77.     Paragraphs 1 through 76 of this Complaint are incorporated herein by reference as though set forth in full.

78.     The actions described herein were in violation of the civil rights of Plaintiff, occurred during the course of Plaintiff's employment with the Defendant and were carried out by the Defendant and its agents, servants, and employees.

79.     The actions described herein in violation of the civil rights of the Plaintiff were committed by the Defendant because of Plaintiff's race, color and/or national origin.

**WHEREFORE**, Plaintiff demands judgment in her favor and against the Defendant and prays:

(a)     That this Court declare that the practices in which the Defendant has engaged are discriminatory and in violation of Title VII of the Civil Rights Act of 1964;

(b)     That this Court permanently enjoin the Defendant from engaging in the racial harassment of its employees;

(c)     That this Court permanently enjoin the Defendant from harassing its employees on the basis of race, color and/or national origin with regard to the terms and conditions of employment;

(d)     That this Court order the Defendant to pay to Plaintiff compensatory damages;

(e)     That this Court order the Defendant to pay the Plaintiff punitive damages;

(f)     That this Court order the Defendant to pay to Plaintiff reasonable attorneys' fees and the costs of this action;

(g)     That this Court retain jurisdiction over this action to ensure full compliance with the Orders of this Court and applicable laws and require Defendant to file such reports as this Court deems necessary to evaluate such compliance; and,

(h)     That this Court order such other and further relief as may be just and equitable.

### COUNT VII

### CIVIL RIGHTS ACT OF 1870
### 42 U.S.C. §1981

### Racial Harassment

80.     Paragraphs 1 through 79 of this Complaint are incorporated herein by reference as though set forth in full.

81.     The actions described herein were in violation of the civil rights of Plaintiff, occurred during the course of Plaintiff's employment with the Defendant and were carried out by the Defendant and its agents, servants, and employees.

82.     The actions described herein in violation of the civil rights of the Plaintiff were committed by the Defendant because of Plaintiff's race and color.

**WHEREFORE**, Plaintiff demands judgment in her favor and against the Defendant and prays:

(a)     That this Court declare that the practices in which the Defendant has engaged are discriminatory and in violation of Title VII of the Civil Rights Act of 1964;

(b)     That this Court permanently enjoin the Defendant from engaging in the racial harassment of its employees;

(c)     That this Court permanently enjoin the Defendant from harassing its employees on the basis of race and/or color with regard to the terms and conditions of employment;

(d)     That this Court order the Defendant to pay to Plaintiff compensatory damages;

(e)     That this Court order the Defendant to pay the Plaintiff punitive damages;

(f)     That this Court order the Defendant to pay to Plaintiff reasonable attorneys' fees and the costs of this action;

(g)     That this Court retain jurisdiction over this action to ensure full compliance with the Orders of this Court and applicable laws and require Defendant to file such reports as this Court deems necessary to evaluate such compliance; and,

(h)     That this Court order such other and further relief as may be just and equitable.

## COUNT IX
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT
### 43 P.S. §955(a)
### Racial Harassment

83.     Paragraphs 1 through 82 of this Complaint are incorporated herein by reference as though set forth in full.

84.     The actions described herein were in violation of the civil rights of Plaintiff, occurred during the course of Plaintiff's employment with the Defendant and were carried out by the Defendant and its agents, servants, and employees.

85.     The actions described herein in violation of the civil rights of the Plaintiff were committed by the Defendant because of Plaintiff's race, color and/or national origin.

**WHEREFORE**, Plaintiff demands judgment in her favor and against the Defendant and prays:

(a)     That this Court declare that the practices in which the Defendant has engaged are discriminatory and in violation of Title VII of the Civil Rights Act of 1964;

(b)     That this Court permanently enjoin the Defendant from engaging in the racial harassment of its employees;

(c)     That this Court permanently enjoin the Defendant from harassing its employees on the basis of race, color and/or national origin with regard to the terms and conditions of employment;

(d)     That this Court order the Defendant to pay to Plaintiff compensatory damages;

(e)     That this Court order the Defendant to pay to Plaintiff reasonable attorneys' fees and the costs of this action;

(f)     That this Court retain jurisdiction over this action to ensure full compliance with the Orders of this Court and applicable laws and require

Defendant to file such reports as this Court deems necessary to evaluate such compliance; and,

      (g)    That this Court order such other and further relief as may be just and equitable.

RESPECTFULLY SUBMITTED:

Borland & Borland, L.L.P.

/s/ Kimberly D. Borland
Kimberly D. Borland, Esquire
69 Public Square
11th Floor
Wilkes-Barre, Pa  18701
Attorney ID.#23673
kborland@borlandandborland.com
(570) 822-3311
(570) 822-9894 (fax)
Attorney for the Plaintiff

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974: See Privacy Act Statement before completing this form. | ☐ FEPA ☒ EEOC | 530-2013-00953 |

Pennsylvania Human Relations Commission _____ and EEOC

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Aneesha Bryant | 973-444-0253 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|
| 122 Pringle Street, Kingston, Pa  18704 | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME  Wilkes-Barre Hospital Company, LLC, t/d/b/a Wilkes-Barre General Hospital | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|

| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 575 North River Street, Wilkes-Barre, PA  18764 | Luzerne |

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|

| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
|---|---|

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box (es))

☒ RACE   ☒ COLOR   ☐ SEX   ☐ RELIGION   ☐ AGE

☒ RETALIATION   ☒ NATIONAL ORIGIN   ☐ DISABILITY   ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)   LATEST (ALL)

8-28-12

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached sheet.

RECEIVED - EEOC
PHILADELPHIA D.O.
2012 DEC 26  A 9: 49

| I want this charge filed with both the EEOC and the State or Local Agency, if any.  I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| *Aneesha F. Bryant* | SIGNATURE OF COMPLAINANT |
| Date  11-26-12          Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE |



EXHIBIT
A

1.     Charging Party is an adult female individual who resides at 122 Pringle Street, Kingston, Luzerne County, PA 18704

2.     Respondent Wilkes-Barre Hospital Company, LLC is a foreign limited liability corporation incorporated in the State of Delaware with a registered office located at c/o Corporation Service Company, Harrisburg, Dauphin County, PA and a mailing address located at 4000 Meridian Blvc., Franklin, TN, 37067.

3.     Respondent's principal place of business is 575 North River Street, Wilkes-Barre, Luzerne County, Pennsylvania 18764 and trades and does business under the name of Wilkes-Barre General Hospital.

4.     Respondent employs more than 1000 individuals.

5.     Respondent operates a hospital.

6.     At all times material hereto, Respondent was, and is, engaged in an industry effecting commerce.

7.     Charging Party is of the black/African-American color, race and national origin.

8.     Charging Party has been employed as a scheduling specialist since or about April 2008.

9.     From the outset of her employment, Charging Party worked as scheduling specialist for the operating room at the Wilkes-Barre General Hospital.

10.    At our about the time of the acquisition of the Wilkes-Barre General Hospital by Community Health Systems and the commencement of operations by Respondent under the name of Wilkes-Barre Hospital Company, LLC, Charging Party continued to work as a scheduling specialist, but now with responsibility for both same day surgery and the operating room and began to work with completely new staff at the surgery center location.

11.    At all times material hereto, Charging Party was qualified for employment by Respondent as a scheduling specialist, for both same day surgery and the operating room.

12.    All other persons employed by Respondent at its surgery center location are of the white race and color and none are of African national origin.

13.    At our about the time of the acquisition of the Wilkes-Barre General Hospital by Community Health Systems and the commencement of operations by Respondent under the name of Wilkes-Barre Hospital Company, LLC, Charging Party began to report directly to Lisa Cernera, director of the surgery center.

14.     Following the acquisition of the Wilkes-Barre General Hospital by Community Health Systems and the commencement of operations by Respondent under the name of Wilkes-Barre Hospital Company, LLC, Charging Party began to be mocked about her speech patterns and pronunciations by one of Respondent's employees, Amy Stewart.

15.     Amy Stewart is of the Caucasian race and white color and is not of an African national origin.

16.     On a regular basis, through and including August 2012, Ms. Stewart would say to and around Charging Party, "birfday," instead of "birthday," and "aks," instead of "ask."

17.     Ms. Stewart's mocking of Charging Party occurred on at least a weekly basis during this period of time.

18.     On at least one occasion, Charging Party asked Ms. Stewart where she heard such language and Ms. Stewart responded the "colored station," referencing Black Entertainment Television.

19.     Charging Party objected to Ms. Stewart's mocking, but it did not stop.

20.     On an occasion in the summer of 2012, Charging Party was asked by a white physician employed by Respondent, Dr. Glen Weaver, "Aneesha, what do you eat, chicken and watermelon?"

21.     Charging Party told Dr. Weaver that she was very offended by the question.

22.     Dr. Weaver responded to Charging Party, "Come, people tell Polack jokes all the time."

23.     On August 16, 2012, Ms.Stewart repeated the "birfday"and "alks" mocking comments in Charging Party's presence at the front counter of the workplace.

24.     The Stewart comments on August 16, 2012 caused Charging Party to become visibly upset.

25.     Momentarily afterwards, Ms. Stewart and Dr. Weaver spoke together.

26.     Momentarily afterwards, Dr. Weaver approached Charging Party and asked her "Why do you say "birfday" and "aks?"

27.   Thereupon, Charging Party went to the office of Mike Padden, the director of the surgical center, and complained of the verbal, racial harassment she had been subjected to.

28.   Later that day, Ms. Stewart approached Charging Party and told her she knew she had complained to Mr. Padden and was trying to get her fired.

29.   On Friday, August 17, 2012, Charging Party was not scheduled to work.

30.   On Charging Party's next scheduled day of work, Monday, August 20, 2012, Charging Party observed that people were not talking to her.

31.   Mr. Padden was off work from Thursday, August 16, 2012 until Wednesday, August 22, 2012.

32.   On Wednesday, August 22, 2012, Charging Party went to Mr. Padden again and complained that he co-workers were not talking to her and in at least one instance, failed to provide her with necessary work documents (a schedule).

33.   Mr. Padden told Charging Party that Ms. Stewart had come to him to ask if she was going to lose her job and Mr. Padden told Charging Party that he told Ms. Stewart that he did not know.

34.   On Friday, August 24, 2012, Charging party went to Lisa Cernera, director of the main operating room for Respondent, and complained to her of the verbal, racial harassment she had been subjected to, as well as the fact that her co-employees were no longer speaking to her at work, nor cooperating with her in their work.

35.   Ms. Cernera told her that she couldn't identify with her because she was not black herself and told her that her own mother still refers to black people as being "colored."

36. The above described conduct of toward the Charging Party was unwelcome by her, and was severe and pervasive.

37. The harassment and retaliation was sufficiently severe and pervasive to alter the conditions of Charging Party's employment and created an abusive working environment, such Charging Party's working conditions were so intolerable that a reasonable person would have felt compelled to resign.

38.   Respondent took no effective action to remediate the harassment and retaliation or to prevent its continuation.

39.   At noon on August 28, 2012, Charging Party provided Ms. Cernera with a letter of resignation, a copy of which is attached hereto and mad a part hereof as Exhibit A.

40.     As a result of the actions and omissions of Respondent, Charging Party has suffered discrimination and harassment in her employment on account of race, color and national origin and has been damaged.

41.     As a result of the actions and omissions of Respondent, Charging Party was constructively discharged.

42.     As a result of the actions and omissions of Respondent, Charging Party has suffered retaliation in her employment and has been damaged.

43.     The actions and omissions of Respondent have been outrageous, extremely offensive, intentional and discriminatory against Charging Party on a continuing basis and have been performed with malicious and reckless indifference to Charging Party's civil rights.

44.     The actions and omissions of Respondent have been outrageous, extremely offensive, intentional and retaliatory against Charging Party on a continuing basis and have been performed with malicious and reckless indifference to Charging Party's civil rights.

To : Lisa Cernera

RE: Aneesha Bryant (Resignation)

Date 8/28/2012


This letter is meant to serve as my formal resignation from the company. On August 24th, I sat down and talked to you about a situation that had occurred among some of the staff at the Center for Same Day Surgery. The original incident occurred on August 16th, which is when I first brought it to the attention of Mike Padden. It has occurred to me that this situation has greatly spiraled out of control (unnecessarily) and I feel that there were no efforts put into rectifying the matter. Since the original incident, some staff members have stopped communicating with me even within the capacity of normal job duties. I have been accused of saying things that I did not say and basically I have been made to feel out casted by several employees. The workplace has become a very uneasy and emotionally stressful environment. This situation is affecting my work performance and compromising my emotional stability. I have been scheduling cases and have found myself near tears due to not knowing whats going on around me. I don't understand why it is people are not communicating with me and no one will tell me any reasons why. I feel that little to no effort has been made to get a grasp of this spiraling situation. I made a final attempt to find out what the issues were among my co workers by asking Mike to have a talk with everyone, and when I went in to ask if anything had come of the conversations, he replied that "basically, everyone seems a little weird right now". I can no longer work in this type of environment, as it has become increasingly uncomfortable and unsettling. It is with my deepest regret to inform you that my last working day will be on Friday September 7th 2012.

Aneesha Bryant



To : Lisa Cernera

RE: Aneesha Bryant (Resignation)

Date 8/28/2012

This letter is meant to serve as my formal resignation from the company. On August 24th, I sat down and talked to you about a situation that had occurred among some of the staff at the Center for Same Day Surgery. The original incident occurred on August 16th, which is when I first brought it to the attention of Mike Padden. It has occurred to me that this situation has greatly spiraled out of control (unnecessarily) and I feel that there were no efforts put into rectifying the matter. Since the original incident, some staff members have stopped communicating with me even within the capacity of normal job duties. I have been accused of saying things that I did not say and basically I have been made to feel out casted by several employees. The workplace has become a very uneasy and emotionally stressful environment. This situation is affecting my work performance and compromising my emotional stability. I have been scheduling cases and have found myself near tears due to not knowing whats going on around me. I don't understand why it is people are not communicating with me and no one will tell me any reasons why. I feel that little to no effort has been made to get a grasp of this spiraling situation. I made a final attempt to find out what the issues were among my co workers by asking Mike to have a talk with everyone, and when I went in to ask if anything had come of the conversations, he replied that "basically, everyone seems a little weird right now". I can no longer work in this type of environment, as it has become increasingly uncomfortable and unsettling. It is with my deepest regret to inform you that my last working day will be on Friday September 7th 2012.

Aneesha Bryant

