**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANEESHA BRYANT,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:14-CV-1062** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **WILKES-BARRE HOSPITAL, COMPANY, LLC,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |

**MEMORANDUM**

Pending before the court is the defendant's amended motion to dismiss all counts of the plaintiff's complaint, (Doc. 10), on the grounds that plaintiff failed to plausibly plead sufficient factual matter to state claims upon which relief can be granted. Based upon the court's review of the relevant documents, the court will **DENY** the defendant's motion.

## I.     PROCEDURAL BACKGROUND

By way of relevant background, the plaintiff, Aneesha Bryant, filed the instant action, (Doc. 1), on June  2, 2014, under Title VII of the Civil Rights Act of 1964, as amended, namely, 42 U.S.C. §2000e, *et seq*., the Civil Rights Act of 1870, namely, 42 U.S.C. §1981, as well as state law, namely, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §955. Plaintiff seeks declaratory relief under 28 U.S.C. §2201 and §2202. Plaintiff attached as exhibits (A & B) to her complaint a copy of her November 26, 2012 Charge of Discrimination she filed with the Equal Employment Opportunity Commission

("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), (Doc. 1, at 24-29, Ex. A), and a copy of her August 28, 2012 resignation letter to Lisa Cernera, the director of the surgery center for defendant, from her employment with defendant, (Doc. 1, at 29, Ex. B). The defendant is plaintiff's prior employer, Wilkes-Barre Hospital Company, LLC ("WBHC"), doing business as Wilkes-Barre General Hospital, located on North River Street, Wilkes-Barre, Pennsylvania.

It is alleged that this court has subject matter jurisdiction over plaintiff's federal claims based on 28 U.S.C. §1331 and §1343(a), and on 42 U.S.C. §2000e-2(a), and that the court can exercise jurisdiction over plaintiff's pendent state claims under 28 U.S.C. §1367. Plaintiff states that venue is proper in this court under 28 U.S.C. §1391 since the alleged unlawful employment practices occurred in the Middle District of Pennsylvania.

After defendant was served, it filed an original motion to dismiss the complaint on July 21, 2014, pursuant to Fed.R.Civ.P. 12(b)(6), and argued, in part, that plaintiff failed to exhaust her administrative remedies with respect to her race-based discrimination, harassment and retaliation claims under Title VII and the PHRA. Subsequently, defendant was advised by plaintiff that she received a Notice of Right to Sue from the EEOC dated July 15, 2014. Thus, defendant withdrew its original motion to dismiss. (Doc. 9). On July 22, 2014, defendant filed an amended motion to dismiss under Rule 12(b)(6), 12(f), and 12(e). (Doc. 10). On August 1, 2014, defendant filed its brief in support. (Doc. 11). Plaintiff filed her brief in opposition on August 18, 2014, with copies of unpublished decisions attached. (Doc. 13). On September 4, 2014, defendant filed its reply brief. (Doc. 16). As such, defendants' amended motion to dismiss is ripe for disposition.

2

On September 10, 2014, plaintiff filed a motion for the court to conduct oral argument on defendant's motion and defendant concurred in the request. (Doc. 17). The court indicated that it would take the request under advisement until it reviewed the briefs of the parties. (Doc. 18). After reviewing the briefs, the court does not find that oral argument is necessary and/or would be helpful in deciding defendant's motion. As such, the court will deny plaintiff's motion to conduct oral argument.

## II.    FACTUAL BACKGROUND[1]

Plaintiff, an African-American, began her employment with defendant in April of 2008, as an operating room scheduling specialist. (Doc. 1, ¶'s 15-16). All of the other people employed by defendant at its same day surgery center where plaintiff worked were Caucasians. (Doc. 1, ¶ 20). During her employment, a Caucasian co-worker named Amy Stewart began to mock plaintiff about her pronunciations of certain words and began to pronounce certain words incorrectly around plaintiff on a regular basis through August of 2012, such as "birfday" as opposed to "birthday" and "aks" instead of "ask". (Doc. 1, ¶'s 22-25). Despite plaintiff's objections to the verbal mockery, Stewart did not stop. Plaintiff also avers that on "at least one occasion", she asked Stewart where she heard such pronunciations and Stewart responded from "the colored station" apparently referring to the Black Entertainment Television network. (Doc. 1, ¶'s 26-27). Further, on one occasion during the summer of 2012, Dr. Glen Weaver, a Caucasian physician employed by

---

[1]The facts alleged in plaintiff's complaint must be accepted as true in considering defendant's motion to dismiss. See Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

defendant, asked plaintiff "what do you eat, chicken and watermelon?" (Doc. 1, ¶ 28). Plaintiff informed Weaver that she was offended by his question and Weaver responded, "Come on, people tell Polack jokes all the time." (Doc. 1, ¶'s 29-30).

On August 16, 2012, Stewart again made the mocking comments, namely, "birfday" and "aks", at the front counter in the workplace in plaintiff's presence and plaintiff became visibly upset. Immediately thereafter, Weaver asked plaintiff "Why do you say 'birfday' and 'aks'?" (Doc. 1, ¶'s 31-34). Plaintiff then went to Mike Padden, the director of defendant's same day surgery center, and complained about the verbal, racial harassment. Later that day, Stewart approached plaintiff and indicated that she was aware of plaintiff's complaint to Padden about her and she accused plaintiff of trying to get her fired. When plaintiff arrived at her next scheduled work day, she immediately observed that her co-workers were not speaking to her, and on one occasion, her co-workers failed to give her the schedule which was a required document to perform her job. (Doc. 1, ¶'s 36-40). Plaintiff states that the conduct of her co-workers caused her to become very uneasy and emotionally stressed. It affected her work performance and she found herself near tears. (Doc. 1, at 30, Ex. B, resignation letter of plaintiff).

On August 22, 2012, plaintiff went to Padden and complained that her co-workers were not speaking to her and refused to give her documents required to perform her job. Padden advised plaintiff that he spoke to Stewart about plaintiff's complaints and that he told Stewart that he did not know if she would lose her job. Padden also told plaintiff that "everyone seemed a little weird right now." (Doc. 1, ¶ 41 and Ex. B).

On August 24, 2012, plaintiff went to Lisa Cernera and complained to

her about the verbal, racial harassment by her co-workers and about the refusal of her co-workers to speak to her and to cooperate with her so she could perform her job. Cernera advised plaintiff that she could not identify with plaintiff since she was not black and told plaintiff that her mother still referred to black people as "colored". (Doc. 1, ¶'s 42-43).

Plaintiff states that since defendant did not take any action to remedy the racial harassment and retaliation, she gave Cernera her resignation letter on August 28, 2012, stating that her last day at work would be September 7, 2012. (Doc. 1, ¶ 46-47 and Ex. B).

As indicated, plaintiff submitted a Charge of Discrimination with the EEOC and the PHRC signed on November 26, 2012, alleging discrimination, harassment, retaliation and constructive discharge due to race, color and national origin. (Doc. 1, at 24-29, Ex. A). Plaintiff received a Notice of Right to Sue from the EEOC dated July 15, 2014.[2]

After plaintiff exhausted her administrative remedies, she filed the instant complaint. In Count I, plaintiff raises a claim of race discrimination in violation of Title VII. In Count II, plaintiff raises a claim of race discrimination under §1981. In Count III, plaintiff raises a retaliation claim under Title VII, and in Count IV, she asserts a retaliation claim under §1981. In Count V, plaintiff raises a claim of race discrimination under §955(a) of the PHRA. In Count VI, plaintiff raises a claim of retaliation under §955(d) of the PHRA. In Count VII, plaintiff raises a claim of racial harassment under Title VII, and in Count VIII

---

[2] Plaintiff must exhaust her administrative remedies before she can file a Title VII action and an action under the PHRA in federal court. *See McIntyre v. City of Wilmington*, 360 Fed. Appx. 355, 356 (3d Cir. 2010)(citation omitted); *Kern v. Schuylkill Inter. Unit 29*, 2010 WL 235107, *3 (M.D. Pa.).

(mislabeled as Count VII), plaintiff asserts a claim of racial harassment under §1981. Finally, in Count IX, plaintiff raises a claim of racial harassment under §955(a) of the PHRA.

As relief, plaintiff seeks a declaratory judgment that defendant engaged in discrimination in violation of state and federal law, a permanent injunction enjoining defendant from discriminating against its employees based on their race, back pay, front pay, compensatory and punitive damages, as well as costs and attorneys' fees.

## III.   STANDARD OF REVIEW

The defendant's motion to dismiss is brought in part pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). Defendant argues that under Rule 12(b)(6), Counts I, II and V of plaintiff's complaint as well as Counts VII-IX, raising claims for racial harassment, should be dismissed for failure to state a cognizable claim. This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of"

necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). However, "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or

futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

Defendant filed, in the alternative, a motion for a more definite statement, in accordance with Rule 8(a) and Rule 12(e) of the Federal Rules of Civil Procedure. Defendant contends that it is unclear what specific causes of action are plead in Counts I, II and V of plaintiff's complaint. The court can direct plaintiff under Rule 12(e) to file an amended complaint if she failed to state her claims in her initial complaint with enough specificity in accordance with Rule and the requirements set out by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). Rule 12(e) provides that the court can require plaintiff to file a more definite statement if a pleading is so vague or ambiguous that the moving party cannot reasonably prepare a response. In Thomas v. Independence Tp., 463 F.3d 285, 301 (3d Cir.2006), the United States Court of Appeals for the Third Circuit stated:

> Under Rule 12(e), a defendant may move for a more definite statement "[i]f a pleading ... is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). The Rule 12(e) "motion shall point out the defects complained of and the details desired." Id. When a complaint fashioned under a notice pleading standard does not disclose the facts underlying a plaintiff's claim for relief, the defendant cannot reasonably be expected to frame a proper, fact-specific ... defense.... The Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to obtain the factual basis underlying a plaintiff's claim for relief.

Defendant also argues that under Rule 12(f), Counts I, II and V of plaintiff's complaint should be stricken as redundant and immaterial. In Tennis v. Ford Motor Co., 730 F.Supp.2d 437, 443 (W.D.Pa. 2010), the court explained as follows regarding a  Rule 12(f) motion:

Under Fed.R.Civ.P. 12(f) "[t]he court may strike from a

8

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) "permits the court, on its own motion, or on the timely motion of a party, to order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Adams v. Cnty. of Erie, Pa., 2009 WL 4016636 at *1 (W.D.Pa. Nov. 19, 2009) quoting Fed.R.Civ.P. 12(f)). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Natale v. Winthrop Resources Corp., 2008 WL 2758238 at *14 (E.D.Pa. July 9, 2008) (quoting McInerney v. Moyer Lumber & Hardware, Inc., 244 F.Supp.2d 393, 402 (E.D.Pa.2002)).

Although courts possess "considerable discretion in disposing of a motion to strike under Rule 12(f),' such motions are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.' " Thornton v. UL Enterprises, LLC, 2010 WL 1005021 at *2 (W.D.Pa. March 16, 2010) (internal citations omitted). "Striking some or all of a pleading is therefore considered a drastic remedy to be resorted to only when required for the purposes of justice." Thornton, 2010 WL 1005021 at *2 ( quoting DeLa Cruz v. Piccari Press, 521 F.Supp.2d 424, 428 (E.D.Pa.2007) (quotations omitted)).

## IV.   DISCUSSION

This court has jurisdiction with respect to plaintiff's Title VII claims pursuant to 28 U.S.C. §1331. *See Page v. Trustees of Univ. of Pennsylvania, 222 Fed. Appx. 144, 145 n. 1 (3d Cir. 2007); Burlington v. News Corp.*, 759 F.Supp. 2d 580 (E.D. Pa. 2010). This Court may exercise pendent jurisdiction over plaintiff's state law PHRA claims pursuant to 28 U.S.C. §1367. *See Slater v. Susquehanna Co.*, 613 F. Supp. 2d 653, 657 (M.D. Pa. 2009).

As mentioned, in Counts I, II and V, plaintiff raises claims of race discrimination under Title VII, §1981 and under §955(a) of the PHRA,

respectively.  In Counts III, IV and VI, plaintiff raises retaliation claims under Title VII, §1981 and under §955(d) of the PHRA, respectively. Further, in Counts VII, VIII (mislabeled as Count VII) and IX plaintiff raises claims of racial harassment under Title VII, §1981 and under §955(a) of the PHRA, respectively.[3]

In Howard v. Blalock Elec. Service, Inc., 742 F.Supp.2d 681, 689-90 (W.D.Pa. 2010), the court explained:

> Title VII's anti-discrimination provision provides that it is an "unlawful employment practice" for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...." 42 U.S.C. §§2000e–2(a)(1). In Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 63–69, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the United States Supreme Court recognized that an employer discriminates against an employee because of his or her sex when it engages in sex-based harassment that

---

[3]The court notes that the analysis of plaintiff's Title VII claims applies equally to plaintiff's PHRA and §1981 claims. *See Rozic v. Trinity Industries, Inc.*, 47 Fed. Appx. 151, 152 (3d Cir. 2002); *Davis v. Tammac Corp.* 127 F. Supp. 2d 625, 629 n. 6 (M.D. Pa. 2000) ("Claims brought under the PHRA are analyzed under the same standards as their federal counterparts.") (Citations omitted); *Thimons v. PNC Bank, N.A.*, 254 Fed. Appx. 896, 897 n. 1 (3d Cir. 2007). "A claim under §1981 generally requires the same elements of proof as an employment discrimination claim under Title VII, but 'is limited to issues of racial discrimination in the making and enforcing of contracts.'" Deans v. Kennedy House, Inc., 998 F.Supp.2d 393, 414 (E.D.P.a 2014) (citations omitted); Booker v. National R.R. Passenger Corp., 880 F.Supp.2d 575, 580 (E.D.Pa. 2012) ("[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII.") (quoting Brown v. J. Kaz, Inc., 581 F.3d 175, 182 (3d Cir.2009)).

is sufficiently "severe or pervasive" to alter the "terms, conditions, or privileges" of his or her employment. The holding in Meritor Savings Bank applies with equal force to harassment based on an individual's race, color, religion or national origin. Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 276, n. 5 (3d Cir.2001). Harassment which does not alter the "terms, conditions, or privileges" of one's employment, however reprehensible it may be, does not run afoul of Title VII. Meritor Savings Bank, 477 U.S. at 67, 106 S.Ct. 2399. An isolated incident amounts to a change in the "terms, conditions, or privileges" of one's employment only if it is "extremely serious." Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Title VII's anti-discrimination provision prohibits only those forms of discriminatory harassment that are severe or pervasive enough to create a hostile or abusive working environment. Fn3 Pennsylvania State Police v. Suders, 542 U.S. 129, 146–147, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004).

FN3. Race-based "hostile work environment" claims are cognizable under §1981, since harassment that is severe enough to alter the "terms, conditions, or privileges" of one's employment within the meaning of Title VII is also severe enough to affect the "benefits, privileges, terms, and conditions of the contractual relationship" between the employee and his or her employer within the meaning of §1981. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 373, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).

"The scope of protection provided by Title VII includes protection against a hostile work environment that is abusive to an employee on the basis of his or her race." Mufti v. Aarsand & Co., Inc., 667 F.Supp.2d 535, 544 (W.D.Pa. 2009) (citing Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir.2001)).

### 1. Counts VII-IX: Claims of Racial Harassment under Title VII, §1981 and the PHRA

Initially, defendant argues that Counts VII, VIII (mislabeled as Count VII)

and IX of plaintiff's complaint raising claims of racial harassment under Title VII, §1981 and the PHRA should be dismissed for failure to state viable claims. In order for an employee to establish a claim of racial harassment, the court in Taylor v. JFC Staffing Assoc., 690 F.Supp.2d 357, 367-68 (M.D.Pa. 2009), stated that the plaintiff must show the following five elements:

> (1) [plaintiff] suffered intentional harassment based on race; (2) the harassment was severe or pervasive; [fn 4]; (3) the harassment detrimentally affected [plaintiff]; (4) the harassment would have detrimentally affected a reasonable person in like circumstances; and (5) there is a basis for employer liability [for the harassment under a theory of respondeat superior liability].

> Fn4. The Third Circuit has often stated that discriminatory harassment must be "severe and pervasive." See e.g., Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir.2001); West v. Phila. Elec. Co., 45 F.3d 744, 753 (3d Cir.1995); Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir.1990). But the Supreme Court's standard is "severe or pervasive." Pa. State Police v. Suders, 542 U.S. 129, 133, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). As the Third Circuit recognized in Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), "the difference is meaningful, and the Supreme Court's word controls." Id. at n. 3. By using the disjunctive "or" the Supreme Court clearly meant that "severe" and "pervasive" are alternative possibilities. In other words, some conduct, although isolated and sporadic, may be severe enough to contaminate the workplace; whereas, other, less objectionable, conduct must be pervasive in order to contaminate the workplace such that it meets the threshold under the second prong of a hostile work environment claim.

(Citation omitted). The same standards apply to hostile work environment claims under Title VII and the PHRA based on race discrimination with the

12

word "discrimination" substituted for the word "harassment" in elements 1-4. See Mufti v. Aarsand & Co., Inc., 667 F.Supp.2d 535, 544 (W.D.Pa. 2009) (citations omitted).

"Employer liability for a racially hostile work environment caused by an employee is not automatic." Id. at 368 (citation omitted). The agency theory upon which plaintiff in the present case relies to hold defendant WBHC liable for a racially hostile work environment is "where an employer was negligent in its failure to discipline or fire, or failure to take remedial action upon notice of harassment. Knabe [v. Boury, 114 F.3d 407], 411 [3d Cir. 1997] (citing Bouton, 29 F.3d at 106)." Id. As such, defendant WBHC can be held liable for the conduct of its employees, such as Stewart and Weaver, if it "was negligent in failing to take the appropriate remedial action upon notice of the harassment." Id. Plaintiff has alleged facts to show that defendant WBHC knew or should have known of the racial harassment by Stewart and Weaver and failed to take prompt remedial action. Thus, liability can be imputed to defendant WBHC for the co-workers harassment in this case. Mufti v. Aarsand & Co., Inc., 667 F.Supp.2d at 545-46.

Further, the conduct "must be extreme to amount to a change in the terms and conditions of employment." Faragher City of Boca Raton, 524 U.S. 775, 787-88 (1998). As defendant correctly points out, "simple teasing, offhand comments and isolated comments (unless extremely serious) will not amount to discriminatory changes in the conditions of employment." (Doc. 11, at 11) (citing Faragher City of Boca Raton, 524 U.S. at 788). "The test looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it interferes with an

13

employee's work performance." Mufti v. Aarsand & Co., Inc., 667 F.Supp.2d at 545. (Citations omitted).

Based on plaintiff's complaint and the allegations detailed above, viewed as true, the court finds insufficient remedial action was taken by plaintiff's supervisors Padden (twice) and Cernera (once) after plaintiff put them on notice of the racial harassment. The court agrees with plaintiff that, at this stage of the case, she has alleged enough facts regarding the conduct of Stewart and Weaver to establish elements 1 and 3 stated above. Plaintiff has sufficiently shown that the conduct of Stewart and Weaver was motivated by animus based upon her race. Mufti v. Aarsand & Co., Inc., 667 F.Supp.2d at 545 ("[T]he intent to discriminate can be inferred from the entire context and the conduct of the actors involved."). Plaintiff has also adequately demonstrated that the harassment detrimentally affected her.

The court also disagrees with defendant that plaintiff has failed to sufficiently allege facts to establish elements 2, 4 or 5 based on the above detailed allegations of plaintiff's pleading. While the court recognizes that sporadic use of abusive language, an occasional offhanded comment and occasional teasing in the work place are insufficient to state a claim under Title VII, Mufti v. Aarsand & Co., Inc., 667 F.Supp.2d at 545 (citation omitted), plaintiff has alleged repetitive conduct by defendant's employees which went beyond simple teasing or occasional use of abusive language and she alleges that the conduct sufficiently affected the conditions of her employment. The court agrees with plaintiff that she "has alleged a continuous pattern of mocking based on her racial characteristics" and that the "distinctly racial" comments were directed at plaintiff in the workplace. (Doc. 13, at 18-19). As the court in *Taylor* noted, "some conduct, although isolated and sporadic, may

14

be severe enough to contaminate the workplace." 690 F.Supp.2d at 367-68 n. 4.

The court also finds that plaintiff's complaint alleges remarks that were sufficiently severe or pervasive for purposes of defendant's motion to dismiss. Despite the fact that some of the alleged conduct was not pervasive, it was sufficiently severe at this stage of the case. As plaintiff recognizes, defendant's arguments (as well as most of the cases cited to by defendant) regarding her racial harassment claims are more appropriately raised by a summary judgment motion after discovery is complete. The court agrees with plaintiff that "the question of whether the allegations contained in a complaint are ultimately sufficient to prove that the discrimination was 'severe or pervasive' is question properly reserved for summary judgment and trial." (Doc. 13, at 16). See Booker v. National R.R. Passenger Corp., 880 F.Supp.2d 575, 582 (E.D.Pa. 2012) ("Courts in this Circuit have thus 'shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive,' Grasty v. World Flavors, Inc., No. 11–1778, 2011 WL 3515864, at *9 n. 2 (E.D.Pa. Aug. 11, 2011), and the Court will not do so in this case.").

At this stage of the case, based on all of the circumstances, the court finds that the racially discriminatory remarks and incidents which are alleged in plaintiff's complaint sufficiently rise to the level of a hostile work environment, *i.e.*, "one in which 'the workplace is permeated with discriminatory intimidation, ridicule and insult.'" Mufti v. Aarsand & Co., Inc., 667 F.Supp.2d at 546 (citations omitted). Additionally, the court finds that plaintiff's complaint, considered with her resignation letter, (Doc. 1, Ex. B),

sufficiently allege facts to show that the conduct "unreasonably [interfered] with her work performance", *Faragher City of Boca Raton,* 524 U.S. at 787-88, and that the harassing conduct "would have detrimentally affected a reasonable person in like circumstances". *Taylor,* 690 F.Supp.2d at 367-68. A summary judgment motion is more appropriate for the defendant to argue that plaintiff's alleged treatment was not sufficient to detrimentally affect a reasonable person in her position.

Defendant also argues that plaintiff has failed to prove constructive discharge and that this provides further support for the dismissal of her racial harassment claims. Despite the fact that plaintiff resigned her position with defendant WBHC, she alleges that her resignation constitutes a constructive discharge. "An employer may be liable for constructive discharge under Title VII." Mufti v. Aarsand & Co., Inc., 667 F.Supp.2d at 553 (citing Pennsylvania State Police v. Suders, 542 U.S. 129, 143, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004)".

"In *Suders*, the Supreme Court stated that a hostile-environment constructive discharge claim 'entails something more' than a hostile work environment claim, as it also requires the claimant to show 'working conditions so intolerable that a reasonable person would have felt compelled to resign.'" Id. (citing Suders, 542 U.S. at 147, 124 S.Ct. 2342). Plaintiff correctly points out that the *Suders* case was decided at the summary judgment stage and that reliance on *Suders* in the present case at its present posture is premature. (Doc. 13, at 25). As discussed above, the court finds that Plaintiff has sufficiently alleged facts based on her complaint along with her resignation letter to state an actionable hostile work environment claim, and that plaintiff has met the more stringent requirements regarding her

constructive discharge claim based on racial harassment. (Doc. 1 & Ex. B).

Thus, the court will deny defendant's motion to dismiss plaintiff's racial harassment claims in Counts VII-IX, as well as plaintiff's claims of constructive discharge.

### 2. Counts III, IV & VI: Claims of Retaliation under Title VII, §1981 and the PHRA

In order to properly plead a retaliation claim in violation of Title VII, a plaintiff must prove a *prima facie* case by providing facts showing that: (1) she was engaged in a protected activity; (2) she has suffered an adverse employment action based on exercise of the protected activity; and (3) there is a causal link between the protected activity and the adverse employment action. *Hussein v. UPMC Mercy Hospital*, 466 Fed. Appx. 108, 111-12 (3d Cir. 2012) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)); *Farrell v. Planters Lifesavers Company*, 206 F.3d 271, 279 (3d Cir. 2000). Further, plaintiff must show a causal connection between her participation in a protected activity and the adverse employment action. *Thomas v. Pocono Mtn. Sch. Dist.,* 2011 WL 2471532, *8 (M.D.Pa. June 21, 2011)*. "Causation 'may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Id.* (citation omitted).

In *Mufti,* 667 F.Supp.2d at 552, the court stated:

> A plaintiff must participate in a protected activity to establish a retaliation claim. See Barber v. CSX Distribution Services, 68 F.3d 694, 700–701 (3d Cir.1995) (finding a general letter of complaint that did not mention discrimination was not a protected activity). Protected activity includes formal charges of discrimination "as well [as] informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or

society in general, and expressing support of co-workers who have filed formal charges." See e.g., Sumner v. U.S. Postal Service, 899 F.2d 203, 209 (2d Cir.1990).

However, to constitute "protected activity," the employee must also have a "good faith, reasonable belief that a violation existed." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir.1996).

To satisfy the third, "material adversity," element of a retaliation claim, plaintiff must prove that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Hare v. Potter, 220 Fed.Appx. 120, 128 (3d Cir.2007)* (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006)).

Further, "Title VII's anti-retaliation provisions [42 U.S.C. §2000e-3] protect employees who oppose employment practices made illegal by Title VII." *Brangman v. Astrazeneca,* LP, 952 F.Supp.2d 710, 721 (E.D.Pa. 2013) (citation omitted). "The Plaintiff must therefore be opposing employment practices made illegal by Title VII." *Id*. (citation omitted). Also, "case law has established that opposition to an illegal employment practice must identify the employer and the practice – if not specifically, at least by context." *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc*., 450 F.3d 130, 135 (3d Cir. 2006). Moreover, "[a] general complaint of unfair treatment is insufficient to establish protected activity under Tile VII." *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc*., 450 F.3d at 135(citations omitted). "[T]o succeed on a Title VII retaliation claim, an employee must have an 'objectively reasonable' belief that the activity he opposes constitutes unlawful discrimination under Title VII." *Ferra v. Potter*, 324 Fed.Appx. 189, 192 (3d Cir. 2009)(citation omitted). Thus, in order for plaintiff's complaints about her treatment by Stewart and Weaver to constitute protected activity

under Title VII, a reasonable person must believe that the conduct complained of violated Title VII. *Id.* (citation omitted); *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995) (complaints about unfair treatment in general and expressions of dissatisfaction in the workplace "do[] not constitute the requisite 'protected conduct' for a *prima facie* case of retaliation.").

In *Hussein*, 466 Fed. Appx. at 112., the Third Circuit stated the following about the PHRA in relation to Title VII:

> The PHRA, which we generally interpret consistently with Title VII, likewise forbids employers from retaliating against employees for asserting their rights under the PHRA. See *Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002)("The language of the PHRA is . . . substantially similar to [Title VII and other federal] anti-retaliation provisions, and we have held that the PHRA is to be [] interpreted as identical to federal anti-discrimination laws except where there is something specifically different . . . .") (citing *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996)).

Therefore, the court analyzes plaintiff's Title VII retaliation claim and her PHRA retaliation claim under the aforementioned Title VII retaliation *prima facie* requirements.

In examining the above detailed facts alleged in plaintiff's complaint in relation to the pleading requirements of Rule 8(a), the court finds that plaintiff has pled her retaliation claims with enough factual sufficiency and has properly pled the elements necessary to successfully state a *prima facie* retaliation claim under both Title VII and the PHRA. Plaintiff alleges that on three occasions she made complaints to her supervisors about racial discrimination and harassment by defendant's employees and, that as a result of her complaints, the conditions of her workplace were made intolerable by

her co-workers, including their refusal to speak to her, their shunning and ignoring of her, and their refusal to provide her (a scheduling specialist) with the necessary and essential documents (*i.e.*, the surgery schedule) to perform her job. Thus, as plaintiff argues, she has not only alleged that she was ignored and shunned at work after her complaint about racial discrimination and harassment to supervisors, but she has also alleged that defendant's employees deliberately interfered with her work to the extent that she could not perform her job. The court also finds that an objectively reasonable person could believe that the remarks made by Stewart and Weaver and the incidents complained about constitute unlawful discrimination.

Therefore, the court will deny defendant's motion to dismiss plaintiff's retaliation claims in Counts III, IV and VI.

### 3. Counts I, II & V: Claims of Race Discrimination under Title VII, §1981 and the PHRA

Defendant argues that Counts I, II and V of plaintiff's complaint raising claims of race discrimination under Title VII, §1981 and the PHRA should be dismissed under Rule 12(b)(6), stricken under Rule 12(f), or alternatively, be subject to more specific pleading under Rule 12(e).

In *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144, 145 (3d Cir. 2007), the Third Circuit stated:

> To establish a prima facie case of Title VII [sex or race] discrimination, [Plaintiff] must show (1) that she belongs to a protected class, (2) that she suffered an adverse employment action (3) under circumstances leading to an inference of unlawful discrimination. *See Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 410 (3d Cir.1999).

*See also Burlington v. News Corp.*, 759 F.Supp. 2d 580, 592 (E.D. Pa. 2010) (citations omitted). Section 2000e-2(m) of Title VII (42 U.S.C.) provides, in

pertinent part, that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." Title VII "prohibits employers from discriminating against individuals on the basis of their race, color, religion, sex, or national origin." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 n. 7 (3d Cir. 2013) (citing 42 U.S.C. §20002-2(a)(2)).

Thus, Title VII "by its terms outlaws treating employees of one race differently from another race." *Burlington*, 759 F.Supp.2d at 596. The Court in *Burlington v. News Corp*., 759 F.Supp. 2d at 592-593, also stated:

> Although showing that similarly situated coworkers were treated more favorably than the plaintiff is one method of satisfying the final element of a prima facie case of discrimination, it is not the only one. The Third Circuit has explained that although some circuits have required plaintiffs to make such a showing in discrimination cases, "that is not the current law in this or the majority of the circuits." *Sarullo*, 352 F.3d at 798 n. 7 (citations omitted). Indeed, the Third Circuit has counseled in *Sarullo* and elsewhere that the prima facie case is intended to be a flexible standard. *See id.* at 797–98 ("[T]he prima facie test remains flexible and must be tailored to fit the specific context in which it is applied." (citing *Geraci v. Moody–Tottrup, Int'l, Inc.,* 82 F.3d 578, 581 (3d Cir.1996))); *see also Wishkin v. Potter,* 476 F.3d 180, 185 (3d Cir.2007) (the prima facie test must be "tailored to fit the specific context in which it is applied" (quoting *Sarullo,* 352 F.3d at 797–98) (internal quotation marks omitted)); *Weldon v. Kraft, Inc.,* 896 F.2d 793, 798 (3d Cir.1990) ("The framework set forth in *McDonnell Douglas,* which begins with proof of a prima facie case, was 'never intended to be rigid, mechanized, or ritualistic.' " (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978))). The Third Circuit has stated that to establish a prima facie case, it is sufficient for a plaintiff to adduce evidence that "establishes a causal nexus between

the harm suffered and the plaintiff's membership in a protected class, from which a juror could infer, in light of common experience, that the defendant acted with discriminatory intent." *Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 275 (3d Cir.2010)* (discussing prima facie case in §1981 context); *Sarullo,* 352 F.3d at 798 (plaintiff "must establish some causal nexus between his membership in a protected class" and the adverse employment decision to establish a prima facie case of discrimination in Title VII case).

Also, "the burden to establish a prima facie case is not an onerous one." *Young v. St. James Management, LLC,* 749 F.Supp. 2d 281, 288 (E.D. Pa. 2010). The elements are dependent on the facts of the specific case. *Id*. (citation omitted).

Defendant argues that plaintiff "has wholly failed to allege any facts that support the second and third prongs of the test." (Doc. 11, at 23). The court does not agree. As thoroughly discussed above, the court finds that plaintiff has alleged enough facts to show that she was subjected to adverse employment actions and that they were under circumstances leading to an inference of unlawful race discrimination. The court has also found that plaintiff has stated sufficient facts to support her constructive discharge claim. Thus, the court will not repeat its discussion, and it will deny defendant's motion to dismiss plaintiff's race discrimination claims.

The court also finds that plaintiff's race discrimination claims are not redundant and immaterial under Rule 12(f) and that plaintiff has adequately plead these claims in her complaint. Additionally, the court will deny

defendant's alternative request to direct plaintiff to provide a more definite statement under Rule 12(e) as to the distinct causes of action raised in Counts I, II and V.

## V.    CONCLUSION

Accordingly, the court will **DENY** defendant's amended motion to dismiss plaintiff's complaint. (Doc. 10). The court will **DENY** plaintiff's motion to conduct oral argument. (Doc. 17). An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: FEBRUARY 10, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-1062-01.wpd

23